**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| MICHAEL RIVERS, et al., : | |
| : | CIVIL ACTION NO. 05-6011 (MLC) |
| Plaintiffs, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | |
| CREDIT SUISSE BOSTON : | |
| FINANCIAL CORP., a/k/a CREDIT : | |
| SUISSE FINANCIAL CORPORATION, : | |
| : | |
| Defendant. : | |

**COOPER, District Judge**

Plaintiffs, Michael Rivers and Kathleen Rivers, allege that defendant, Credit Suisse Boston Financial Corp., violated the Truth in Lending Act ("TILA") and the New Jersey Consumer Fraud Act ("NJCFA"). (Dkt. entry no. 13.) Defendant now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). (Dkt. entry no. 18.) For the following reasons, the Court will (1) grant the motion insofar as it concerns the TILA claim, (2) enter judgment in defendant's favor on the TILA claim, (3) deny the motion insofar as it concerns the NJCFA claim, and (4) remand the NJCFA claim to state court.[1]

---

[1] The Court only considered the Complaint, Answer, and transaction documents for purposes of deciding this motion on the pleadings, in accordance with Rule 12(c). The Court did not consider, <u>inter alia</u>, the affidavit of Michael Rivers submitted with plaintiff's reply brief (dkt. entry no. 19), or the documents and correspondence submitted with the Answer, insofar as they were not part of the transaction at issue (dkt. entry no. 16).

**BACKGROUND**

Plaintiffs, husband and wife, received a loan from defendant in an original principal amount of $243,000 on November 8, 2004 ("the loan"). (Dkt. entry no. 13, Am. Compl., at ¶ 5.)  The loan was secured by a Mortgage with an "Adjustable Rate Rider." (Id.; see Ans., Ex. A.)  Plaintiff Kathleen Rivers, before entering into the loan with defendant, entered into an agreement with Allied Home Mortgage Capital Corporation ("Allied"), a mortgage broker, to obtain a residential mortgage loan. (Ans., Ex. C, "Mortgage Loan Origination Agreement.")  Pursuant to the terms of that agreement, Kathleen Rivers agreed to pay Allied a $4,860 commission, represented by 2% on the loan, or "2 points." (Ans., Ex. D, "Commitment Letter.")  The commitment letter stated that the balance of $4,860 "will be payable at closing via certified or cashier's check." (Id.)  This commission was included as part of a written "Itemization of Prepaid Finance Charge" prepared by defendant "for internal use only." (Ans., Ex. B.)

Kathleen Rivers elected to select her own attorney to represent plaintiffs during the loan transaction. (Ans., Ex. H.) Lennart A. Carlson, Esq. completed plaintiff's paperwork in preparation for the loan and during the closing of the loan. (Id., Exs. D-F; Am. Compl., Ex. B.)  At the closing, plaintiffs signed a TILA Disclosure Statement, acknowledging that they had received the "fully completed" TILA Disclosure Statement. (Am.

2

Compl., Ex. A.)  Plaintiffs also signed a HUD-1 Form that was completed by Carlson.  (Am. Compl., Ex. B; Ans., at ¶ 8.)

The "closing disbursement instructions" from Allied directed Carlson to collect, inter alia, the $4,860 in fees for the loan "discount" that were "payable to ALLIED HOME MTG."  (Ans., Ex. F.)  The instructions further specified that Carlson should "remit by separate check" the fees due to Allied.  (Id.)  In completing the HUD-1 Form at closing, Carlson erred by subtracting the $4,860 due to Allied from the total settlement charges, rather than including it as part of the total settlement charges.  (Am. Compl., Ex. B.)

Allied inquired with plaintiffs following the closing about the "amount of monies owed to Allied."  (Am. Compl., Ex. C.)  Plaintiffs' current attorney informed defendant via letter dated October 7, 2005, that plaintiffs were rescinding the loan transaction because required TILA disclosures had not been made. (Ans., Ex. L.)  Defendant did not allow rescission and plaintiffs filed a complaint against defendant alleging violations of TILA and the NJCFA in New Jersey Superior Court on November 3, 2005. (Dkt. entry no. 1.)  The defendant removed the action to this Court on December 29, 2005, under 28 U.S.C. § 1331 only.  (Id.)

## DISCUSSION

Plaintiffs allege that the TILA Disclosure Statement lacked the material disclosures required by 15 U.S.C. § 1635 and

Regulation Z, 12 C.F.R. §§ 226.17-18, 226-33, specifically the points payable in connection with the loan and a "yield spread premium" due to the mortgage broker. (Am. Compl., at ¶ 6.)[2] Plaintiffs claim that the HUD-1 Form also misstated the points and yield spread premium. (Id. at ¶ 8.) Plaintiffs allege that after the closing, defendant, through Allied, demanded that plaintiffs pay an additional $7,138.10 in finance charges, consisting of the commission of $4,860 and the yield spread premium of $2,278.12.[3] (Id. at ¶¶ 8 & 13, Ex. B.) Plaintiffs assert defendant "violated N.J.S.A. 56:8-2 by misrepresenting the total costs of the Loan to the [plaintiffs] when it failed to accurately disclose the points and yield spread premium, thereby inducing the [plaintiffs] to enter into the transaction." (Am. Compl., at ¶ 22.)

---

[2]   A yield spread premium is:

    a bonus paid to a broker when it originates a loan at an interest rate higher than the minimum interest rate approved by the lender for a particular loan.  The lender then rewards the broker by paying it a percentage of the "yield spread" (i.e., the difference between the interest rate specified by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan.

In re Bell, 309 B.R. 139, 153 (Bankr. E.D. Pa. 2004).

[3]   Allied requested $7,138.10 from plaintiffs, although the correct total of the $4,860 in commission and $2,278.12 yield spread premium is actually $7,138.12, a difference of two cents.

4

Defendant moves for judgment on the pleadings pursuant to Rule 12(c) on the grounds that plaintiffs cannot maintain a claim for violation of TILA because (1) the yield spread premium due to the mortgage broker was properly excluded from the finance charges, (2) the points payable to Allied as a commission were accurately disclosed and included as part of the finance charge, and (3) defendant did not demand payment from plaintiffs after the closing, and the post-closing actions of independent contractors Allied and Carlson in demanding payment cannot be attributed to defendant.  (Def. Br., at 14, 15; Def. Reply Br., at 4-11.)  Therefore, defendant argues, plaintiffs have no right to rescind the loan beyond the three day rescission period because there were no violations of Regulation Z or errors in the finance charge.  (Def. Br., at 16.)

I.   **Rule 12(c) Standard**

Rule 12(c) allows any party to move for "judgment on the pleadings." Fed.R.Civ.P. 12(c).  The difference between a motion pursuant to Rule 12(c) and a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is a matter of timing.  Specifically, motions brought pursuant to Rule 12(b)(6) must be filed before any responsive pleading, while motions brought pursuant to Rule 12(c) may be brought after a responsive pleading has been filed.  Fed.R.Civ.P. 12(b)(6), (c); <u>Turbe v. Gov't. of V.I.</u>, 938 F.2d 427, 428 (3d Cir. 1991).  Nevertheless, Rule 12(h)

provides that the defense of failure to state a claim may be raised in a motion for judgment on the pleadings.  Fed.R.Civ.P. 12(h)(2); Turbe, 938 F.2d at 428.  Thus, the Court must apply the same standards to a Rule 12(c) motion as would be applied to a Rule 12(b)(6) motion.  Turbe, 938 F.2d at 428.

A motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but merely tests the legal sufficiency of the complaint.  Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  A court may grant a motion to dismiss a complaint under Rule 12(b)(6) or 12(c) "only if, accepting all alleged facts as true, the plaintiff is not entitled to relief."  Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).

The Court, when considering such a motion, must accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to the plaintiff.  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); see also Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) ("We must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them.")  A court, however, need not credit "bald assertions" or "legal conclusions," and should not accept "unwarranted inferences" when deciding a motion to dismiss.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  "Dismissal of claims [on a

6

motion to dismiss] is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim upon which relief may be granted." Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when confronted with a motion to dismiss, generally only considers the allegations in the complaint, exhibits attached to the complaint, and public records. Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999). We generally cannot "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). We may, however, consider all documents that are "integral to or explicitly relied upon in the complaint." Id. (internal quotations and citation omitted).

**II. Plaintiffs' TILA Claim**

**A. Defendant did not fail to provide any material disclosures**

TILA requires lenders to provide borrowers with specified written disclosures addressing certain terms of their loans. See 15 U.S.C. § 1638. "Regulation Z" outlines the material disclosures that lenders must make "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). The lender is required to disclose certain details concerning the:

> (a) Creditor; (b) Amount financed; (c) Itemization of amount financed; (d) Finance charge; (e) Annual percentage rate; (f) Variable rate; (g) Payment

> schedule; (h) Total of payments; (i) Demand feature;
> (j) Total sale price; (k) Prepayment; (l) Late payment;
> (m) Security Interest; (n) Insurance and debt
> cancellation; (o) Certain security interest charges;
> (p) Contract reference; (q) Assumption policy; and (r)
> Required deposit.

Id. at § 226.18.

The lender is required to "make disclosures before consummation of the transaction." Id. at § 226.17(b). A lender's failure to accurately provide any of the "material disclosures" under Regulation Z extends the borrower's right to rescind the loan beyond the standard three business days after closing. 12 C.F.R. § 226.23(a)(3). However, if "a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation" of Regulation Z. Id. at § 226.17(e).

The Court will grant judgment in favor of the defendant on the TILA claim because even assuming the truth of all facts alleged by plaintiffs, plaintiffs have failed to show that they are entitled to relief under TILA. Plaintiffs' claim that defendant failed to provide material disclosures and demanded additional, undisclosed finance charges fails because (1) the points payable to Allied on plaintiffs' loan were properly included as part of the finance charge in defendant's TILA Disclosure Statement, (2) the yield spread premium was properly not included as part of the finance charge, and (3) the points

payable on the loan and the yield spread premium are not "material disclosures" for purposes of rescission under TILA.

### 1. Points payable

The points payable to Allied here were properly included as part of the total finance charge included on defendant's TILA Disclosure Statement, and are not "material disclosures" that should have been individually itemized elsewhere on that statement or elsewhere in defendant's disclosures.  The "finance charge" includes "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605.  The finance charge includes "fees charged by a mortgage broker (including fees paid by the consumer directly to the broker or to the creditor for delivery to the broker)."  12 C.F.R. § 226.4(a)(3).

"The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d)."  12 C.F.R. § 226.23(a)(3) n. 48.  The <u>itemization</u> of the finance charge is not a "material disclosure" that extends the plaintiff's right of rescission if not delivered to plaintiff.  <u>Smith v. Fid. Consumer Discount Co.</u>, 898 F.2d 896, 901 (3d Cir. 1990).  In <u>Smith</u>, the defendant's "inaccurate

9

disclosure of the itemization of the 'amount give to [plaintiff] directly' did not warrant rescissory relief" because the itemization was not a material disclosure. 898 F.2d at 901. The Third Circuit explained that "the list of material disclosures [in Section 226.4(b)(4) of Regulation Z] was meant to be exhaustive rather then illustrative." Id.

The "Itemization of Prepaid Finance Charges" prepared by defendant here lists a "Discount Fee" of $4,860 payable to Allied. (Ans., Ex. B.) This "discount fee" is the $4,860 in commission, represented by 2%, or "2 points" on the loan, Kathleen Rivers agreed to pay Allied. (Id.; Id., Ex. D, "Commitment Letter.") Thus, defendant properly included the points payable to Allied in the finance charge, as shown by its inclusion in the Itemization of Prepaid Finance Charges prepared by defendant.

Plaintiffs do not rely upon any case law or TILA provision in support of their argument that itemization of the points payable on the loan were "material disclosures," the absence of which from the disclosures received by plaintiff invoked their right of rescission. Applying the Third Circuit's holding in Smith to this case, it is sufficient under TILA that defendant included the amount of the "points payable" to Allied in the finance charge. Even if plaintiffs did not receive an itemization of the components of the finance charge, such

10

itemization is not a "material disclosure" and accordingly even defendant's failure to provide the itemization would not entitle plaintiffs to rescission.  See Smith, 898 F.2d at 901.[4]

### 2. Yield spread premium

The defendant did not violate TILA by failing to disclose the yield spread premium because it is not a "material disclosure" or an item required for inclusion in the finance charge under TILA.  The yield spread premium is excluded from the finance charge and not included in the points and fees calculation.  Stump v. WMC Mortg. Corp., No. 02-326, 2006 WL 645238, *4 (E.D. Pa. Mar. 16, 2005); Balko v. Carnegie Fin. Group, 348 B.R. 684, 693 n. 11 (Bankr. W.D. Pa. 2006) (rejecting plaintiffs' argument that the lender had a duty to separately disclose the yield spread premium).  "While the [yield spread premium] is a finance charge, the Federal Reserve Board has concluded that it should not be disclosed as a pre-paid finance charge pursuant to 15 U.S.C. § 1605(a)(6) because it is already included in the interest rate . . . either as interest or as points" and "should not be double counted."  Oscar v. Bank One, No. 05-5928, 2006 WL 401853, at *5 (E.D. Pa. Feb. 17, 2006) (holding that the yield spread premium was properly excluded from

---

[4]  The Court assumes that defendant did not provide plaintiffs with the "Itemization of Prepaid Finance Charge" because the document is printed with "This form is for internal use only."  (Ans., Ex. B.)

11

the pre-paid finance charge in the TILA disclosure statement given to plaintiffs).

The Court concludes that plaintiffs' argument that "The Yield Spread Premium that CSFC demanded from the [plaintiffs] should have been included in the finance charge disclosures" is squarely contradicted by the relevant case law and without merit because defendant was not required to include the yield spread premium as part of the pre-paid finance charge. To the extent that plaintiffs argue defendant impermissibly demanded charges "in addition to the usual yield spread premium," that argument also fails, for the reasons addressed in the following section of the opinion.

> **B.    Carlson's and Allied's demands for payment occurred after defendant provided the required disclosures to plaintiffs and do not constitute TILA violations by defendant**

The complaint, insofar as it alleges that defendant violated TILA by failing to disclose additional finance charges it demanded from plaintiffs after closing, fails because these allegations only address closing and post-closing conduct not attributable to defendant with regard to its disclosure obligations. If "a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation" of Regulation Z. 12 C.F.R. § 226.17(e); see also Smith, 898 F.2d at 899-900 (citing Section 226.17(e) and noting that "inaccuracies in

disclosures are not violations if attributable to events occurring after the disclosures are made").

Plaintiffs argue that defendant is liable under TILA because it:

> asserted the right to collect additional fees that were not disclosed until well after the closing occurred. The lender did so indirectly, through its mortgage broker, Allied, and its closing agent, Mr. Carlson, who demanded that the Rivers pay additional monies, among which was a so-called "Yield Spread Premium" allegedly due Allied from the Rivers.  There is no dispute that Mr. Carlson acted on behalf of the lender as he was the only attorney involved in the action, serving as the broker's attorney and closing agent.  This essentially constituted the "indirect imposition" by the lender, [defendant], of finance charges, to which it asserted the right to payment.  Since the lender failed to disclose and itemize the charges it demanded after the closing, it violated TILA and Regulation Z disclosure requirements.

(Pl. Br., at 7.)  Even assuming for purposes of this motion that all the facts asserted by plaintiffs are true, plaintiffs' argument insofar as it attempts to allege TILA violations must still fail because it relies solely on actions taken by Carlson and Allied, after defendant delivered the required disclosures.

Carlson's actions cannot be attributed to defendant because Carlson was the closing agent for plaintiffs and did not represent or otherwise implicate defendant through his actions. Prior to entering into the loan transaction, Kathleen Rivers signed a "New Jersey Right to Own Attorney Disclosure" notice on which she stated she would select an attorney.  (Ans., Ex. H.) The inference that the attorney chosen by plaintiffs was Carlson

13

is supported by the fact that Carlson's name appears on all of plaintiffs' loan paperwork as the closing agent.  (See Ans., Exs. D-F; Am. Compl., Ex. B.)  The Court finds that this showing refutes plaintiffs' argument that Carlson was not plaintiffs' attorney and that he was "Allied's closing agent," recommended to plaintiffs by Allied so "that the Rivers could save money and reduce their closing costs by not retaining their own attorney." (Pl. Br., at 2.)

Allied's attempt to obtain its commission from plaintiffs following closing on the loan also does not constitute the imposition of additional finance charges by defendant.  Kathleen Rivers agreed to pay Allied $4,860 as commission for obtaining plaintiffs' residential mortgage loan, and plaintiffs were aware the commission was due to Allied at closing via certified or cashier's check.  (Ans., Ex. C, "Mortgage Loan Origination Agreement"; Ex. D, "Commitment Letter.")  The discrepancy in the amount of money due to Allied at the closing was based upon a calculation error by Carlson in filling out the HUD-1 Form. (Id., Exs. E-G.)  As previously discussed, defendant provided the required material disclosures.  Any inaccuracies in the disclosure forms created by Carlson's error in drafting the closing papers and Allied's subsequent attempts to recover its commission and fees cannot be attributed to defendant and are not a violation of TILA.

14

**III. Plaintiffs' NJCFA Claim**

Plaintiffs assert a claims under the NJCFA in count two of the complaint.  (See Compl., at ¶¶ 21-22.)  Defendant removed the action to this Court under § 1331 only.  (Id. at ¶ 2.)  The Court will not exercise supplemental jurisdiction over these state law claims in view of the impending dismissal of the federal claims.  See 28 U.S.C. § 1367(c)(3) (authorizing same).  Thus, the Court will remand plaintiffs' state law claims under the NJCFA to state court.

## CONCLUSION

The Court concludes that plaintiffs have failed to state a claim against defendant for TILA violations because defendant (1) provided the required material disclosures, and (2) cannot be held liable under TILA for any inaccuracies arising as a result of events following its provision of the required disclosures.  The Court will remand plaintiffs' state law claims under the NJCFA to state court.  The Court will issue an appropriate order and judgment.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge